## *In re* CAMMARATA.

1. PARDON—CONDITIONS—PAROLES.

   A governor may affix to pardons and paroles such reasonable conditions as he sees fit (Const 1908, art 6, § 9).

2. SAME—COMMUTATION OF SENTENCE—ACCEPTANCE OF CONDITIONS —ESTOPPEL.

   A prisoner who accepts the benefits of a commutation of sentence must accept it in accordance with the terms imposed by the executive authority granting it and is estopped from denying that he agreed to its terms (Const 1908, art 6, § 9; CL 1929, § 17515).

3. SAME—COMMUTATION OF SENTENCE—CONDITIONS—LEAVING STATE OR COUNTRY.

   A condition of a commutation of sentence that the convict leave the State or the United States and not return is a valid condition.

4. SAME—CONDITIONS—ULTRA VIRES.

   A conditional parole or pardon is not *ultra vires.*

5. SAME—COMMUTATION OF SENTENCE—CONDITIONS—DEPORTATION.

   Commutation of sentence for purposes of deportation which included a condition that prisoner "must never return to the United States" was not satisfied by merely leaving the United States (CL 1929, § 17515).

6. SAME—DEPORTATION—JURISDICTION OF COMMISSIONER.

   The jurisdiction of the commissioner of pardons and paroles does not terminate upon the deportation of a prisoner whose sentence was commuted and which commutation included, as a condition of the parole, that he be deported and never return to the United States (Const 1908, art 6, § 9; CL 1929, § 17515).

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 39 Am Jur, Pardon, Reprieve and Amnesty §§ 65, 67, 87.
[1–4] Conditional pardon.  60 ALR 1410.
[2] 39 Am Jur, Pardon, Reprieve and Amnesty § 63.
[3, 5, 6] 39 Am Jur, Pardon, Reprieve and Amnesty § 68.
[7] 39 Am Jur, Pardon, Reprieve and Amnesty § 87.

7. Same—Conditional Parole—Jurisdiction—Deportation.

> The State parole board did not waive jurisdiction over parolee under a parole whereby his sentence was commuted for deportation and included a condition that he must never return to the United States, he was deported, he returned to the United States and while he was making an effort to obtain a pardon, the immigration authorities were advised a pardon was denied and issuance of warrant for parole violation was not made until it became apparent that efforts to redeport him were ineffective (Const 1908, art 6, § 9; CL 1929, § 17515).

Original petition by Frank Cammarata for writ of habeas corpus directed to warden of State prison of southern Michigan, with ancillary writ of certiorari to Michigan department of corrections, to test validity of incarceration. Submitted October 12, 1954. (Calendar No. 46,161.) Writ dismissed December 29, 1954. Certiorari denied by Supreme Court of the United States June 6, 1955.

*Joseph W. Louisell* (*Ivan E. Barris,* of counsel), for plaintiff.

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Daniel J. O'Hara, James R. Ramsey* and *Perry A. Maynard,* Assistants Attorney General, for defendants.

Sharpe, J.   We allowed habeas corpus and the ancillary writ of certiorari to inquire into the legality of petitioner's detention by the warden of the State prison of southern Michigan. On February 26, 1931, petitioner was sentenced by a judge of the recorder's court of the city of Detroit, Michigan, to serve a prison term of 15 to 30 years upon conviction of robbery while armed. See *People* v. *Cammarata,* 257 Mich 60.

The record shows that on November 16, 1936, Governor Fitzgerald commuted the sentence to read, "Six and one-half to 30 years less good time allow-

ance for deportation only." It also appears that on December 16, 1936, the commissioner of pardons and paroles, at the direction of Frank D. Fitzgerald, governor of the State of Michigan, signed a parole certificate which read, in part, as follows:

"Whereas, it is desired to parole Frank Cammarata #29806 in custody of warden for delivery to immigration officials if and when called for for deportation to Italy. In the event subject is not deportable this action is void. Immigration authorities to hold this inmate against bail should he attempt to stay deportation. Must never return to the United States. Immigration authorities to notify parole department when subject actually leaves the country."

On December 16, 1936, petitioner was delivered into the custody of the United States immigration service authorities for deportation to Italy. He was deported on or about January 9, 1937. On or about October 21, 1939, petitioner made an illegal entry into the United States and went directly to Pittsburgh, Pennsylvania, where he lived with his family for about 2 years. He later moved to Ohio.

In a letter written July 29, 1946, the Michigan parole board was notified by the immigration and naturalization service at Detroit, Michigan, that petitioner was under investigation, and inquiry was made whether or not he was wanted for violation of his conditional parole. It appears that no reply was made to this communication. On September 24, 1946, the Michigan deputy in charge of supervision of pardons and paroles notified the Detroit office of immigration and naturalization service that Frank Cammarata was "still under jurisdiction of this department." On October 7, 1946, the bureau of pardons and paroles wrote a letter to petitioner's counsel, a copy of which reads as follows:

"October 7, 1946
"Mr. James V. Bellanca
"Attorney and Counselor
"1500 David Stott Building
"Detroit 26, Michigan
                "Re: Frank Cammerata, #29806-J
*"Dear Jim:*

"I did receive the message but I have been busy out of town and writing briefs for the present term of the Supreme Court.

"I took this matter up with the parole board and the board will not under the circumstances recommend a pardon for this man.

"The board feels that he received more consideration from Governor Fitzgerald than he was entitled to, and as a result of his former pardon for deportation only, the former Governor was severely criticized by the newspapers and one of our Federal judges. Cammerata sneaked back into this country and is now subject to a prison term for violation of the immigration laws and also as a parole violator from Jackson prison.

"I regret that the board is not the least bit interested in this matter. If his wife went with him, she knew what she was doing at the time. Sometimes you have a good case, but this is not one of them.
                "Cordially yours,
                "BUREAU OF PARDONS AND PAROLES
                "By /s/ PERRY A. MAYNARD
                        "Perry A. Maynard
                        "Legal Investigator
"6/cm"

On December 20, 1946, the Detroit office of the immigration and naturalization service wrote a letter to the bureau of pardons and paroles, a copy of which reads as follows:

"December 20, 1946
"Please refer to this file number
"6011/A-3596
"Bureau of Paroles and Pardons,
"112 State Office Building,
"Lansing 13, Michigan.

*"Gentlemen:*

"With reference to your telegram of September 24th last in the case of FRANK or FRANCESCO CAMMARATA, your file 29806-J, will you please advise as to whether or not your department is still interested in this subject, your wire having stated that a, definite decision in this matter would be forwarded within 3 days. The same has not been received to date.

"Will you kindly expedite your decision in this case as much as possible.
                    "Respectfully,
                    "E. E. Adcock,
                    "District Director.
          "By: /s/ ELDEN P. MCGLYNN
                    "Elden P. McGlynn,
                    "Chief, Investigations Section."

On December 26, 1946, the bureau of pardons and paroles replied to the above letter as follows:

"December 26, 1946
"Mr. Elden P. McGlynn, Chief
"Investigations Section
"Immigration and Naturalization Service
"3770 East Jefferson Avenue
"Detroit 7, Michigan
                    "Re:   Pardon Application of
                          Frank Cammerata, #355
                          Your No. 6011/A-3596
*"Dear Mr. McGlynn:*

"We have your letter of December 20. We notified this subject's attorney on October 7 that our parole board was not in the least interested in this matter..

"The reason we did not notify you was because your correspondence was in one file and the attorney's correspondence was in another.

"As far as our files are concerned, the application for pardon has been denied.

> "Very truly yours,
> "Bureau of Pardons and Paroles
> "By /s/ Perry A. Maynard
>    "Perry A. Maynard
>    "Legal Investigator

"6/cm"

On January 20, 1947, the following letter was written:

> "January 20, 1947

"Mr. Hassett
"Immigration and Naturalization Service
"Cleveland, Ohio

> "Re:  Pardon Application of
>    Frank Cammerata, #355

*"Dear Mr. Hassett:*

"Kindly be advised that our parole board is not the least interested in this matter and has no intention of interceding in any respect with any proceedings which you may have in mind.

> "Very truly yours,
> "Bureau of Pardons and Paroles
> "By /s/ Perry A. Maynard
>    "Perry A. Maynard
>    "Legal Investigator

"6/cm"

On February 27, 1948, Frank Cammarata filed with the Michigan parole board an application for pardon after parole or discharge. It is apparent that one of the reasons for filing the above application was to avoid deportation.

On July 13, 1948, a letter was written to Frank Cammarata's counsel from the division of pardons, paroles and probation, a copy of which reads as follows:

"July 13, 1948

"Mr. Joseph W. Louisell

"Attorney At Law

"2680 Penobscot Building

"Detroit, Michigan

"Re: Pardon Application of
Frank Cammerata, #355

*"Dear Mr. Louisell:*

"Will you kindly call your client in and get a full history of Frank Cammerata's activities ever since he was paroled in custody of the warden for delivery to the immigration authorities for deportation to Italy on December 16, 1936. We want his social, industrial and economic history from the day he was deported until the present time, including his life in Italy, and the manner and the date in which he sneaked back into this country in violation of his parole.

"We would like to have this information so that further investigation can be made.

"For your further information, we still believe that Judge Ide has jurisdiction of this matter. Although the parole board has not acted upon this violation, he still is in violation of his parole because he came back into this country in violation of the immigration law and the terms of his parole, and he has never been discharged from parole. Consequently, the court still has jurisdiction.

"Very truly yours,

"DIVISION OF PARDONS,
PAROLES AND PROBATION

"By /s/ PERRY A. MAYNARD

"Perry A. Maynard,

"Legal Adviser

"6/cm"

On April 20, 1949, the application for pardon was denied by the parole board. On October 16, 1950, the Detroit office of the immigration and naturalization service wrote the following letter:

"October 16, 1950
                              "Please refer to this
                              file number
                              6011/A–3596 Adj.

"Mr. Roy H. Nelson, Parole
"Eligibility Examiner
"Division of Pardons, Paroles and Probation
"State Office Building
"Lansing 13, Michigan

*"Dear Sir:*

"With reference to your personal call at this office on September 15, 1950 at which time the matter of the deportation of Frank Camerata was discussed, you are informed that an inquiry was made of our central office as to the present status of the deportation matter of his case. In reply thereto this office was informed by radiogram on October 6, 1950 as follows:

" 'The division of pardons paroles and probation the State of Michigan should be informed that deportation to Italy within a reasonable time is highly improbable as the service has to date been unable to secure the required travel documents and private bill HR 3890 is still pending.'

"Very truly yours,
                      "James W. Butterfield
                      "District Director
                      "By /s/ HARRY KOBEL
                              "Harry Kobel, District
                              "Adjudications Officer"

On November 14, 1950, a warrant was issued for parole violation against Frank Cammarata who was then living in Ohio. An application was made to Governor Williams for a requisition upon the Governor of Ohio. A hearing was conducted. On March 2, 1951, Governor Williams issued a requisition on the Governor of Ohio for a warrant of rendition for the arrest of Frank Cammarata. On March 5, 1951, Governor Lausche of Ohio issued a warrant of ren-

dition for the extradition of Frank Cammarata. He was arrested, whereupon he promptly filed a petition for a writ of habeas corpus. On March 28, 1953, petitioner filed an application for a writ of certiorari in the United States Supreme Court. This application was denied. See *Frank Cammarata* v. *State of Ohio,* 345 US 998 (73 S Ct 1130, 97 L ed 1404). The application for a rehearing was also denied. See 346 US 842 (74 S Ct 14, 98 L ed 362).

On July 2, 1953, Frank Cammarata was returned to Michigan for violation of his parole. In January, 1954, he filed his petition for writ of habeas corpus and writ of certiorari in the Michigan Supreme Court. The petition alleges that the bureau of pardons and paroles never acquired jurisdiction over Frank Cammarata, and if it did acquire jurisdiction, it waived jurisdiction in 1946 and 1947.

At the outset we are confronted with the purpose and nature of the orders issued by Governor Fitzgerald on November 16, 1936, and December 16, 1936, copies of which orders read as follows:

"STATE OF MICHIGAN

"EXECUTIVE DEPARTMENT

"To        Harry H. Jackson,        Warden of the Southern Michigan Prison.

"Whereas, In the Recorder's Court for the County of Wayne, on the        26th        day of        February in the year of our Lord one thousand nine hundred thirty-one,        FRANK CAMMERATA was convicted of the crime of Robbery armed and sentenced therefor to imprisonment in the Southern Michigan Prison for the term of        Fifteen to thirty years.

"And Whereas, Application has been made for the commutation of the sentence of the said        FRANK CAMMERATA

and the reasons assigned therefor appearing to me satisfactory.

"Now Therefore, Know ye that I,____Frank D. Fitzgerald____Governor of the State, by virtue of the power and authority in me vested, Do Hereby Commute the sentence of the said____FRANK CAMMERATA____so that the same will read: Six and one-half to thirty years less good time allowance for deportation only.

"You are hereby required, to make your records to conform herewith and to make due return hereof.

"In Witness Whereof, I have hereto affixed my signature, and caused the Great Seal of the State to be impressed hereon, at Lansing this____16th____day of____November____in the year of our Lord one thousand nine hundred thirty six.

SEAL OF STATE OF MICHIGAN /s/FRANK D. FITZGERALD By the Governor:
ORVILLE E. ATWOOD /s/
Secretary of State."

"STATE OF MICHIGAN
"EXECUTIVE DEPARTMENT
"FRANK D. FITZGERALD
"GOVERNOR IN AND OVER THE STATE OF MICHIGAN
"To____HARRY H. JACKSON____Warden of the____SOUTHERN MICHIGAN PRISON

"Whereas, it is desired to PAROLE FRANK CAMMERATA #29806 IN CUSTODY OF WARDEN FOR DELIVERY TO IMMIGRATION OFFICIALS IF AND WHEN CALLED FOR FOR DEPORTATION TO ITALY. IN THE EVENT SUBJECT IS NOT DEPORTABLE THIS ACTION IS VOID. IMMIGRATION AUTHORITIES TO HOLD THIS INMATE AGAINST BAIL SHOULD HE ATTEMPT TO STAY DEPORTATION. MUST NEVER RETURN TO THE UNITED STATES. IMMIGRATION AUTHORITIES TO NOTIFY PAROLE DEPARTMENT WHEN SUBJECT ACTUALLY LEAVES THE COUNTRY.

"Now Therefore, know ye, that I, Frank D. Fitz-gerald, Governor as aforesaid by virtue of the power and authority in me vested by law, Do Hereby Parole said Frank Cammerata and permit him to go at large outside the buildings and enclosures of said Prison.

"And I Do Hereby Require, That upon the production and exhibition to you of these presents, the said prisoner be forthwith allowed to proceed to the place of employment provided for him.

"And you are hereby required to make due return hereof, with your doings herein, according to law.

"And you are further required to deliver a copy of this permit to said prisoner when paroled.

"Signed and delivered by the Commissioner of Pardons and Paroles at Lansing, this   Sixteenth day of   December   in the year of our Lord one thousand nine hundred and thirty  six,  at the direction of Frank D. Fitzgerald, Governor of the State of Michigan.

/s/   Joseph C. Armstrong
Commissioner of Pardons and Paroles"

The above orders were issued as a result of Frank Cammarata's application for clemency, which recites that if released he desires to go to Italy. It is urged by petitioner that he was not the recipient of a statutory parole; that when Governor Fitzgerald acted in the premises he was exercising his executive powers to commute sentences and issue pardons, in pursuance of article 6, § 9, of the Michigan Constitution of 1908, and that any action taken by the commissioner of pardons, paroles and probation, in an effort to effect commutation of sentence and a conditional parole for petitioner, was *ultra vires,* and devoid of any jurisdiction over petitioner.

It is the position of the attorney general that the warrants of November 16, 1936, and December 16, 1936, constituted a valid, conditional commutation

and pardon, designed to permanently rid the State of Michigan of Frank Cammarata's presence, rather than a statutory parole designed to permit rehabilitation of Frank Cammarata. Article 6, § 9, of the Constitution of 1908, provides, in part, that the Governor:

"May grant reprieves, commutations and pardons after convictions for all offenses, except treason and cases of impeachment, upon such conditions and with such restrictions and limitations as he may think proper, subject to regulations provided by law relative to the manner of applying for pardons."

When petitioner was released from prison in 1936 the manner of applying for pardons and paroles of prisoners then in effect was set forth in PA 1921, No 403 (CL 1929, §§ 17513–17520 [Stat Ann §§ 28.1291–28.1298]). Section 3 of PA 1921, No 403 (CL 1929, § 17515 [Stat Ann § 28.1293]), provided:

"Each applicant shall affirmatively promise in such application to obey any conditions imposed upon him by the governor."

It clearly appears that the intent of Governor Fitzgerald's order was that petitioner would be deported to Italy to remain there permanently. Under the act in question the governor could affix to pardons and paroles such reasonable conditions as he saw fit. In *People* v. *Marsh*, 125 Mich 410 (51 LRA 461, 84 Am St Rep 584), we held that a pardon conditioned upon reimbursement to Ingham county was a valid condition.

In *Meyers* v. *Jackson*, 245 Mich 692, we held that a prisoner who accepts the benefit of a commutation must accept it in accordance with the terms imposed by the executive authority granting it.

It is generally held that a condition that the convict leave the State and never return is a valid condition. For a collection of cases along this line, see 60

ALR 1415, where it cites: California—*Ex parte Marks,* 64 Cal 29 (28 P 109, 49 Am Rep 684) ; Iowa— *State, ex rel. Davis,* v. *Hunter,* 124 Iowa 569 (100 NW 510, 104 Am St Rep 361) ; Minnesota—*State, ex rel. O'Connor,* v. *Wolfer,* 53 Minn 135 (54 NW 1065, 19 LRA 783, 39 Am St Rep 582, 9 Am Crim Rep 487) ; New York—*People* v. *Potter,* 1 Park Crim Rep 47, 1 Edm Sel Cas 235 ; Ohio—*Ex parte Lockhart,* 1 Disney 105 ; Pennsylvania—*Commonwealth* v. *Haggerty,* 4 Brewst 326 ; South Carolina—*State* v. *Fuller,* SCL (1 M'Cord) 178 ; *State* v. *Smith,* 17 SCL (1 Bail) 283 (19 Am Dec 679) ; *State* v. *Addington,* 18 SCL (2 Bail) 516 (23 Am Dec 150) ; *State* v. *Barnes,* 32 SC 14 (10 SE 611, 6 LRA 743, 17 Am St Rep 832).

It has also been held that a condition requiring the prisoner to leave the United States and not return is a valid condition. See 60 ALR 1416, where it cites: *People* v. *Potter* (NY), *supra; Flavell's Case,* 8 Watts & S (Pa) 197 ; *Commonwealth* v. *Haggerty* (Pa), *supra.*

In our opinion the condition attached to petitioner's commutation of sentence was valid. We are not in accord with his claim that the conditional parole or pardon was *ultra vires.* The conditional pardon, while signed by the commissioner of pardons and paroles, was done at the direction of the governor. Moreover, petitioner, in accepting the commutation, is estopped from denying that he agreed to its terms. It is also urged that when petitioner went to Italy at the request of the United States government the single condition attached to his pardon was satisfied. We think that when petitioner left the city of New York for Italy, 2 conditions were attached to his pardon, namely, that he be deported, and a subsequent condition that he never return to the United States.

In *Jurczyszyn* v. *Michigan Parole Board,* 316 Mich 529, we held:

"The surrender of a paroled convict to the authorities of another jurisdiction for trial upon a criminal charge does not, as a matter of law, constitute a permanent waiver of the right to recommit such convict on account of the violation of the terms or conditions of his parole, to serve out the remainder of his sentence." (Syllabus.)

We conclude that the commissioner of pardons and paroles' jurisdiction did not terminate upon the deportation of petitioner.

It is also urged that the Michigan parole authorities waived jurisdiction over petitioner by procrastinating for a period of about 4 years before attempting to incarcerate him. This claim is based upon a letter written by the bureau of pardons and paroles on January 20, 1947, to the Cleveland office of the immigration and naturalization service which, in part, reads as follows:

"Our parole board is not the least interested in this matter and has no intention of interceding in any respect with any proceedings which you may have in mind."

It should be noted that when this letter was written it was captioned, "Re: Pardon Application of Frank Cammerata, #355." We also note that at this time it was contemplated that petitioner would be deported unless pardoned. With this thought in mind we have no doubt that it was the position of our bureau of pardons and paroles that their failure to act would result in the deportation of petitioner, and it is in that light that we construe the January 20, 1947, letter authorized by the bureau of pardons and paroles.

Petitioner relies on *In re Colin,* 337 Mich 491. In that case we held that parole officers of the State

may not withhold exercise of their right to reimprison a parole violator and exercise it at some remote time at the whim or caprice of the parole board. The above case is not controlling of the issue in the case at bar. In the instant case the letter of the immigration and naturalization service in Detroit, Michigan, to the Michigan parole board under date of July 29, 1946, was a notification to it that petitioner was in the State of Ohio. The letter to the Cleveland, Ohio, office of immigration and naturalization service by the bureau of pardons and paroles under date of January 20, 1947, was a notification to the immigration service that the parole board of Michigan was not interested in the pardon of Frank Cammarata. We have in mind that when the above letter was written deportation proceedings were in progress and the parole board was aware of the fact that Frank Cammarata would be deported unless an executive pardon was granted. Viewed in this light it clearly appears that the parole board was still desirous of having Frank Cammarata deported. It also appears that on October 16, 1950, the Detroit office of the immigration and naturalization service notified the division of pardons, paroles and probation that:

"This office was informed by radiogram on October 6, 1950 as follows: 'The division of pardons paroles and probation the State of Michigan should be informed that deportation to Italy within a reasonable time is highly improbable as the service has to date been unable to secure the required travel documents and private bill HR 3890 is still pending.' "

Upon receipt of this letter the parole board promptly acted, as on November 14, 1950, it issued its parole violation warrant.

Under these circumstances, we hold that the parole board did not waive jurisdiction of Frank Cam-

marata. It follows that the writ of habeas corpus heretofore issued is dismissed.

BUTZEL, C. J., and CARR, BUSHNELL, REID, and DETHMERS, JJ., concurred.

BOYLES and KELLY, JJ., did not sit.