**Frank CAMMARATA, Plaintiff,**

v.

**Walter SAHLI, District Director Immigration and Naturalization Service, Detroit, Michigan, Defendant.**

**Civ. A. 18086.**

United States District Court
E. D. Michigan, S. D.
June 17, 1958.

---

2. There has been substantial interest in the purchase of legitimate theatres by investors outside the trade.

**126**

Joseph W. Louisell, Detroit, Mich., for plaintiff.

Fred W. Kaess, U. S. Atty., Detroit, Mich., John L. Owen, Asst. U. S. Atty., Detroit, Mich., Charles Gordon, Regional Counsel, U. S. Dept. of Justice, Immigration and Naturalization Service, St. Paul, Minn., for defendant.

THORNTON, District Judge.

The Court has before it plaintiff's motion for a preliminary injunction and defendant's motion to dismiss the complaint herein. The said motion of plaintiff is brief and is here set forth in its entirety:

"Now comes, Frank Cammarata, by his attorney, Joseph W. Louisell, and moves this Court for a preliminary injunction in this cause to enjoin the defendant Walter Sahli, his agents, officers, employees, successors and deputies and all persons acting through or under him, from enforcing a certain warrant directing the deportation of the plaintiff until the final determination of this cause.

"The grounds of this Motion are that plaintiff has filed a Motion with the Board of Immigration Appeals, Washington, D. C. for Re-opening and Reconsideration of the deportation proceedings to apply for relief from deportation under Public Law 85–316 of September 11, 1957 and regulations by the Attorney General promulgated thereunder. Said Motion was denied by the Board of Immigration Appeals on May 21, 1958 and, as charged in the complaint filed in this cause, said de-

cision by the Board of Immigration Appeals was arbitrary, capricious and a denial of plaintiff's rights.

"Unless defendant is restrained from so doing, he will seek to enforce the warrant directing the plaintiff's deportation from the United States to the immediate and irreparable damage to plaintiff.

"No injury will result to the defendant from the granting of the injunction as the plaintiff is readily available for deportation in the event final judgment is rendered in favor of the defendant; that unless an injunction is granted as prayed for, plaintiff will be denied the opportunity to avail himself of statutory and administrative remedies provided in such matters by applicable statutes and regulations."

The motion of plaintiff's counsel on behalf of plaintiff which was denied by the Board of Immigration Appeals on May 21, 1958, was treated by said Board in its order of denial as follows:

"This case is before us pursuant to counsel's motion dated May 8, 1958 for reopening and reconsideration.

"The respondent is a 60-year-old married male, native and citizen of Italy, who stated that he first entered the United States about 1912 or 1913. An order of deportation was entered on June 4, 1931, and the respondent was deported on January 9, 1937. He testified that he reentered the United States as a stowaway in 1939 and that he has remained in this country since that time. In connection with an offense committed on July 1, 1925, the respondent was convicted on February 21, 1931 of armed robbery and was sentenced to imprisonment for a term of 15 to 30 years. On September 3, 1947 an order of deportation was entered by the Acting Commissioner and on January 20, 1948 we held that the respondent was not deportable on the lodged charge stated above but we affirmed the Acting Commissioner's order insofar as it directed deportation on the two charges stated in the warrant of arrest.

"The record file, which was transmitted to us with counsel's motion, does not indicate what transpired subsequent to July 19, 1948. Counsel failed to comply with the provisions of 8 C.F.R. 6.21 to the effect that the moving party shall state whether or not the alien is the subject of a pending criminal proceeding under 8 U.S.C. 1252(e) in cases where a deportation order is outstanding, and that there shall be included in the motion a statement as to whether or not the alien is subject to *any* pending criminal prosecution in cases where the motion is for the purpose of seeking discretionary relief. However, counsel's motion indicates that the respondent is presently confined in a Michigan prison and the Service has informed us that he is to be released on May 29, 1958. We observe from In re Cammarata's Petition (1954), 341 Mich. 528, 67 N.W.2d 677 that the respondent was extradited from Ohio and returned to Michigan on July 2, 1953 for violation of his parole. Hence, it appears that he has been incarcerated in a penal institution from July 1953 to the present time.

"Counsel's motion is predicated on Section 5 of the Act of September 11, 1957 (Public Law 85-316; 71 Stat. 639), and he requests that the respondent be given an opportunity to establish his eligibility for a waiver of the criminal grounds of excludability. Counsel asserts that the respondent's deportation would be an extreme hardship to his United States citizen spouse and children. Apparently there are three children who were born about 1927, 1931 and 1938.

"8 U.S.C. 1101(f) (7) precludes a finding of good moral character

where the alien has been confined, as a result of conviction, to a penal institution for an aggregate period of 180 days or more during the period for which he is required to establish good moral character. This provision does not bar the granting of relief under Section 5 of the Act of September 11, 1957 since that statutory provision does not contain a specific requirement that the alien shall establish good moral character. However, the granting of such relief is discretionary.

"The respondent has apparently been confined to a penal institution since July 1953—a period of almost five years. We believe that he should not be granted relief under Section 5 of the Act of September 11, 1957 at this time because his recent imprisonment prevents a determination of whether or not he will rehabilitate himself and whether or not he is worthy of relief under that statutory provision. If we were to reopen the proceeding, we would find it necessary to exercise our discretion under Section 5 of the Act of September 11, 1957 by denying relief under that statutory provision. Accordingly, no useful purpose would be served in reopening the hearing. It is well settled that a rehearing in an administrative proceeding is not a matter of right but lies within the discretion of the agency making the order. United States v. Pierce Auto Freight Lines (1946) 327 U.S. 515, 535, 66 S.Ct. 687, 90 L.Ed. 821; Interstate Commerce Commission v. City of Jersey City (1944) 322 U.S. 503, 514, 64 S.Ct. 1129, 88 L.Ed. 1420. Assuming that the respondent is deported following his release from prison our action will not necessarily bar him permanently from returning to the United States since he may again apply under Section 5 of the Act of September 11, 1957 when he is in a position to establish that he merits that relief

"Order: It is ordered that counsel's motion be and the same is hereby denied."

The gist of plaintiff's contention here before this Court relates to the above denial by the Board on May 21, 1958 of the motion to reopen and reconsider the deportation proceedings which had culminated in the order of deportation of September 3, 1947. This order is one that was to have been put into effect as to plaintiff upon his release (May 29, 1958) from a Michigan prison where he has been confined since July 1953. (It appears from an office memorandum contained in Exhibit 2 herein from the Acting District Director of Detroit to the Chairman of the Board of Immigration Appeals, dated May 12, 1958, that the local Italian Consul had "committed to issue" a travel document and made arrangements to effect the deportation of the plaintiff to Italy via British Overseas Airways Corporation on May 29, 1958.) Plaintiff contends that the aforesaid denial by the Board on May 21, 1958, of the motion to reopen and reconsider was "arbitrary, capricious and a denial of plaintiff's rights."

It is the claim of plaintiff that the basis upon which he relies for relief is Section 5 of the Act of September 11, 1957, 8 U.S.C.A. § 1182b, hereinafter referred to as Section 5, which reads as follows:

"Any alien, who is excludable from the United States under paragraphs (9), (10), or (12) of section 1182 (a) of this title, who (A) is the spouse or child, including a minor unmarried adopted child, of a United States citizen, or of an alien lawfully admitted for permanent residence, or (B) has a son or daughter who is a Untied States citizen or an alien lawfully admitted for permanent residence, shall, if otherwise admissible, be issued a visa and admitted to the United States for permanent residence (1) if it shall be established to the satisfaction of the Attorney General that (A) the

alien's exclusion would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, or son or daughter of such alien, and (B) the admission to the United States of such alien would not be contrary to the national welfare, safety, or security of the United States; and (2) if the Attorney General, in his discretion, and pursuant to such terms, conditions, and procedures as he may by regulations prescribe, has consented to the alien's applying or reapplying for a visa and for admission to the United States. Pub.L. 85–316, § 5, Sept. 11, 1957, 71 Stat. 640."

Under this Act the bar is lifted as to certain aliens excludable under paragraphs (9), (10), or (12) of section 1182 (a) U.S.C.A., Title 8, to enable them to apply for admission to the United States.

As to aliens who are in this country and desire to take advantage of Section 5, there is available a provision in the regulations promulgated by The Commissioner of Immigration and Naturalization, which provision has been in effect for a number of years. This is a special provision to permit aliens, in certain classifications, within the United States to leave this country for Canada, apply for an immigration visa, and make entry into the United States therefrom. This provision in the regulations is known as "Preexamination of Aliens within the United States" and is to be found in 8 C.F.R. Part 235a.[1] This provision is a special dispensation-type of provision for those persons who qualify to avail themselves of it. It has been indicated to this Court that persons seeking admission under Section 5 may, if

qualified, take advantage of the preexamination regulation. One of the conditions to be met in this connection is that the applicant be a person of good moral character. We are informed that the good moral character requirement is, by the rules of the Service, one that must be established for a preceding five-year period.

The petitioner here claims that he comes within the purview of Section 5— claims that he is excludable under (9) of Section 1182(a) of Title 8; claims that he is the spouse of a United States citizen and the father of three United States citizens; claims that his exclusion will result in extreme hardship to such persons.

Petitioner did not seek relief directly under Section 5 by applying for a visa[2] but rather he relied on Section 5 as his ground for the motion to reopen and reconsider, filed before the Board of Immigration Appeals. His contention was that the Board must reopen the deportation proceedings to grant him the opportunity to take advantage of Section 5 (in effect since September 11, 1957). The Board, as we have seen, denied this request.

 As we see our function in this matter, recognizing that the thrust of plaintiff's argument is arbitrary and capricious action by the Board, it is for us to determine whether the Board, in fact, abused its discretion and acted arbitrarily and capriciously, or whether there was a sound and logical basis for its determination.

As we have pointed out, the basis for the motion to reopen was Section 5. It was and is plaintiff's position that the proceedings should be reopened to give

---

1. "Application. Any alien, except a citizen of Canada, Mexico, or islands adjacent to the United States, who entered the United States prior to January 1, 1957, and has been continuously physically present in the United States since that date, shall apply for preexamination on Form I–63 if he intends to apply to a consular officer of the United States in Canada for an immigrant visa and he believes that he will be admissible to the

United States under all the provisions of the immigration laws if in possession of an immigrant visa; that he will be able to obtain the prompt issuance of an immigrant visa, and that he is a person of good moral character."

2. We understand that a person within the United States cannot apply for an immigrant visa for admission to the United States.

him the opportunity to apply for relief under Section 5. Let us proceed for the moment on the ASSUMPTION that the Board had granted the motion to reopen. What would plaintiff's succeeding steps necessarily have to be? In order to avail himself of Section 5, he would also have to take advantage of the preexamination regulation, since that appears to be the only avenue open to a person residing in this country. Section 5 as enacted is obviously aimed at persons physically outside the United States—the language of the statute "shall, if otherwise admissible, be issued a visa and admitted to the United States for permanent residence" is meaningless unless referring to admission TO the United States from WITHOUT. Because of the preexamination regulation it is, however, possible for one within the United States to follow a specified procedure and gain the benefit of the Section 5 remedy. In the case of plaintiff, under our above ASSUMPTION, after the assumed reopening of the deportation proceedings for the purpose of enabling plaintiff to avail himself of Section 5, the preexamination regulation would have to be invoked. Section 5 would be of no aid to him without the implementation of said regulation. It would, of course, be necessary for plaintiff to be in a position to comply with the conditions of this regulation if he is to use *it* as the means of getting any relief under Section 5. One of the conditions with which plaintiff would have to comply is the requirement that he be a person of good moral character. The obstacle with which he would find himself confronted is found in 8 U.S.C.A. § 1101(f) (7). This reads as follows:

"(f) For the purposes of this chapter—

"No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was—

"(7) one who during such period has been confined, as a result of conviction, to a penal institution for an aggregate period of one hundred and eighty days or more, regardless of whether the offense, or offenses, *for which he has been confined were committed within or without such period.*"

■■ It is clear from a reading of Section 5 that good moral character is not a requirement specified therein. It is also clear from a reading of Section 5 that it does not specifically offer surcease to aliens residing in this country. The preexamination regulation is the source of legislative and/or administrative grace in this respect. Since it is a matter of special arrangement *it* must be strictly interpreted and its terms strictly complied with. We think it *logical* to conclude, in view of (f) (7) above, that as a matter of law plaintiff, because of his recent incarceration for about 5 years, is not in a position to take advantage of 8 C.F.R. 235a (Preexamination of Aliens within the United States). If this is so, then Section 5 is not applicable to him because it has no application to an alien within the United States except insofar as such alien can bring himself within the conditions of the preexamination regulation.

We are informed by the parties that this is a case of first impression. With this we cannot agree. The law books are replete with cases involving judicial review of administrative agency action. This is another such case.

From what we have said in connection with our ASSUMPTION that the Board had granted the motion to reopen, it can readily be seen that certain steps in certain order would have to be taken by plaintiff to attempt to gain any advantage from such favorable action by the Board. There is a logical progression to the reasoning here necessary to determine whether Section 5 could be of any benefit to the plaintiff in his present situation. The steps go something like this:

1. If Section 5 is to be of aid to this plaintiff he must invoke regulation 235a (8 C.F.R. 235a).

2. 235a contains a condition, or requirement, of good moral character (5 years has been the period for which good moral character has been required to be established).

3. One who, for the period for which good moral character is required to be established, has been confined to a penal institution for an aggregate period of 180 days or more is precluded from being regarded as a person of good moral character [Title 8 U.S.C.A. 1101(f) (7)].

The above syllogism appears to us as being sound logic. We are not here making a determination that as a matter of law (f) (7) Title 8 U.S.C.A. § 1101 controls regulation 235a. We are simply holding that it may reasonably be considered as controlling the regulation, and that to so consider it is not arbitrary and capricious action. We do not, in any event, quite see how (f) (7) could be completely ignored in relation to 235a.

We find ourselves in a position then where the harshness of the consequences of the narrow scope of the present review of agency discretion is not ours to evaluate. If there is a sound and logical basis on which the exercise of agency discretion could have been predicated, how can we conclude that such action was arbitrary and capricious, and an abuse of discretion? . From the simple three-step syllogism above set forth, it seems apparent to us that there exists a sound and logical basis for the action of the Board in denying the plaintiff's motion for reopening and reconsideration. It has been held that "an administrative ruling on a question of law would be accepted if reasonable, unless there were 'compelling considerations to the contrary'." Washington v. Summerfield, 97 U.S.App.D.C. 105, 228 F.2d 452, 455.

■ "Rehearings before administrative bodies are addressed to their sound discretion and only a showing of the clearest abuse of discretion would justify the interference of the Court. United States v. Pierce Auto Freight Lines, 327 U.S. 515, 535, 66 S.Ct. 687, 90 L.Ed. 821." Monumental Motor Tours v. United States, 110 F.Supp. 929, 932.

"A petition for a rehearing before an administrative body is addressed to its discretion, and only a clear abuse of that discretion will support judicial intervention. Interstate Commerce Commission v. Jersey City, New Jersey, 322 U.S. 503, 64 S.Ct. 1129, 88 L.Ed. 1420; United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L. Ed. 821." McMahon v. Ewing, D.C., 113 F.Supp. 95, 97.

"The Attorney General, acting through his subordinate, the Commissioner of Immigration, conceded petitioners' eligibility for suspension of deportation and, in the exercise of his discretion, denied suspension. Actually, all we have here is dissatisfaction on the part of the aliens *with the discretion* exercised by the Attorney General. When a statute commits action to agency discretion, a court may not substitute its discretion for that of the agency. The courts can interfere only when there has been a clear abuse of discretion or a clear failure to exercise discretion. United States ex rel. Adel v. Shaughnessy, 2 Cir., 1950, 183 F.2d 371." Avila-Contreras v. McGranery, D.C., 112 F.Supp. 264, 267–268.

We conclude, therefore, that the temporary injunction should not be granted, that the Board did not act arbitrarily and capriciously, and that the Government's motion to dismiss should be granted.

Insofar as findings and conclusions are necessary under Fed.Rules Civ.Proc. rule 52, 28 U.S.C.A., and to the extent necessary for our determination here, they may be considered as included herein.

Appropriate orders may be presented.