384 P.2d 394

**Paul MANSELL, Plaintiff and Appellant,**

v.

**Warden John W. TURNER, Defendant and Respondent.**

No. 9881.

Supreme Court of Utah.

Aug. 2, 1963.

Paul Mansell, pro se.

A. Pratt Kesler, Atty. Gen., Ronald N. Boyce, Asst. Atty. Gen., Salt Lake City, for respondent.

HENRIOD, Chief Justice.

Appeal from a denial of petition for writ of habeas corpus. Affirmed.

Mansell, convicted burglar, was granted a termination of sentence by the Board of

Pardons, conditioned on his leaving Utah, providing that if he returned he would be reimprisoned. He agreed to the conditions in writing, paid no attention to them, stayed in Utah and was returned to the state prison.

Petitioner urges that the conditional termination amounted to a banishment offensive to Art. I, Sections 3, 9 and 26 of the Utah Constitution, the 5th, 6th and 14th amendments of the Federal Constitution, was against public policy, hence void.

■ If the conditional termination were void, petitioner has no complaint as to recommitment to prison, since the compact was nudum pactum.

■ If he takes the inconsistent position that it was valid but unenforceable, the same result should inhere, since it would be against public policy unilaterally to enforce it in favor of the felon as against the state, but unenforceable by the latter,— particularly when the whole tenor of the conditioned compact was a matter of grace to the former.

■ Under Art. VII, sec. 12, Utah Constitution, implemented by Title 77–62–3, U.C.A.1953, the Board is authorized to release prisoners on condition. Under what conditions, the legislation is silent, but the authority obviously is plenary. The prisoner may reject the conditions and serve out his term. It hardly lies in his mouth to accept such conditions, obtain his release from confinement and then blithely contend his sentence is terminated and he is free as a bird. Any such ridiculous result would militate against clemency for all prisoners, and a Board of Pardons, in its right mind, would withhold from them any conditional release, simply to wait until it decided it was time for unrestricted termination.

■ Petitioner cites Michigan and South Carolina cases [1] in support of his position. There *the court* sentenced the prisoner to virtual banishment. This is no analogy to a conditional release by a state clemency agency, and it is significant to note that both Michigan and South Carolina have held in cases analogous to the instant case precisely as we are constrained to decide here.[2] The Michigan court said that "It is generally held that a condition that the convict leave the state and never return is a valid condition." [3] We subscribe.[4]

1. People v. Baum, 251 Mich. 187, 231 N. W. 95, 70 A.L.R. 98; State v. Baker, 58 S.C. 111, 36 S.E. 501.
2. In re Cammarata, 341 Mich. 528, 67 N. W.2d 677, cert. denied 349 U.S. 953, 75 S.Ct. 881, 99 L.Ed. 1278; State v. Barnes, 32 S.C. 14, 10 S.E. 611, 6 L.R.A. 743.
3. See also Kavalin v. White, 44 F.2d 49 (10th Cir.).
4. The author has the following to observe about Mr. Justice Crockett's concurrence,

CALLISTER, and WADE, JJ., concur.

McDONOUGH, J., concurs in the result.

CROCKETT, Justice (concurring).

I concur but desire to add these observations. While as pointed out in the opinion, the Board of Pardons has plenary power to release prisoners on condition, I think it im-

plicit in the creation of the Board and its duties that the condition imposed must bear some reasonable relationship to the function it is purposed to perform. That is, it should be something calculated to assist in the treatment or rehabilitation of the individual and/or the protection of society. Only such a condition would be a valid exercise of the Board's authority. But it is easy to imagine conditions which may be

without expectation or request that his colleagues share it. Mr. Justice Crockett asserts that the only condition the Pardons Board validly can impose is one designed to treat or rehabilitate the person and/or to protect society. The Constitution does not say so, nor does its implementation. The Board's authority, is plenary, exercisable with or without condition. Pardons are granted to persons convicted but later proven innocent by a confessor. Such person needs neither treatment nor rehabilitation, nor is he a menace to society. A dying, pardoned convict is another example, and many others could be mentioned. If the condition for termination should be unconstitutional as a denial of due process, for example, (which is difficult to perceive) the convict need not accept the condition, and in such event there is no condition, and the sentence would have to be served. To date, so far as I know, the Board has been neither ludicrous nor labial toward unconstitutional conduct. The Board is a constitutional agency, presumptively honorable, with full power to grant clemency. It is not for this court to graze in its policy pasture. If, as the concurrence implies, a conditional termination may be onerous and in fact is, the applicant for liberty may consider it so and turn it down. He may be willing, however, to accede to the condition and consider it better than a cage. The assumption that a condition requiring one to leave the state

to be an expulsion is not borne out by logic, since the applicant has a choice to leave voluntarily or stay in jail. Such assertion is inapropos here, where the petitioner *voluntarily and in writing* chose to be free on condition, rather than to remain in prison. Mr. Justice Crockett's opinion that it would be unwise *as a matter of policy* and unfair to sister states to condition a sentence termination on the petitioner's leaving the state, is nursed by no judicial precedent. Such policy is reserved to the Pardons Board and is none of this court's business, unless unconstitutional action has been demonstrated. Supreme Courts of sister states have taken the position that any unwisdom of Pardons Boards' actions is no concern of the courts, unless it is shown clearly that unwisdom is synonymous with unconstitutionality. In my opinion the concurrence envisions *what* power *this court should have been given,* but which was withheld by the constitution makers in a determination to breathe life into the separation of powers concept. Simple answer to any sophistry indulged contrariwise is that a person sentenced to a term in prison, but supplicating freely and voluntarily may or may not accede to a conditional release. If he does, he is bound by his bond, and if not, he is bound by his sentence. Ridiculosity of the condition is not a matter of concern to us, if, no matter how ridiculous, it is not tainted with unconstitutionality.

capricious or arbitrary and which would have no such purpose, in which event the condition could not properly be imposed.

Without knowing more facts than are made to appear to us, I confess difficulty in seeing how the order expelling plaintiff from the state of Utah would serve the purpose indicated. In that connection I observe that in my opinion it would be particularly unwise as a matter of policy and unfair to our neighboring states to order a convict to leave the state if this were done only because it seemed undesirable to have such an individual at large in Utah. If this is so, the likelihood is that it would likewise be undesirable for him to be at large in our sister states. If the officials of our own and our sister states should follow a policy of expelling persons for no other reason than that they are convicts, it would result in merely shuttling undesirable persons back and forth to each other.

However, in deference to the authority of the Board and its wisdom in performing its duties, I am willing to assume that its order was motivated by something other than the fact that plaintiff was a convict; and that there was some particular reason why the purpose of his rehabilitation and/or public safety would best be served by his removal from the state. Upon that basis I concur in affirming the judgment.