SIRIANNI *v.* DEVANEY.

Trusts—Fraud—Resulting Trust—Burden of Proof.

> Wife, who waited eight years and until after husband's death before asserting that he had fraudulently taken title in his own name to home purchased with her money, *held*, not to have sustained burden of proof that he held title in trust for her, where, in meantime, they had been divorced, property settlement had been had without reference to property in question, inference is strong that she knew how title stood, and evidence preponderates that defendant, to whom husband deeded, advanced substantial sum of money and assumed mortgage without knowledge of wife's claim (3 Comp. Laws 1929, §§ 12975, 12976).

Appeal from Gogebic; Driscoll (George O.), J. Submitted June 15, 1932. (Docket No. 163, Calendar No. 36,494.) Decided September 16, 1932.

Bill by Maria Antoinette Sirianni against Signe V. Devaney to set aside a deed to real estate. Decree for plaintiff. Defendant appeals. Reversed, and bill dismissed.

*Jones & Patek,* for plaintiff.

*Edward W. Massie,* for defendant.

Fead, J. Plaintiff was the wife of Dr. Sirianni, who was a wanderer, who moved his family to many places, and was not provident. Plaintiff's father furnished her with considerable sums of money throughout her married life.

In 1918 plaintiff purchased real estate in Hurley, Wisconsin, with moneys furnished by her father. In 1920, this property was sold, and Sirianni in-

vested part of the proceeds in a home in Ironwood, Michigan, the premises at bar. He took title in his own name. Plaintiff gave him power of attorney. He mortgaged the property for $1,500. Plaintiff claimed it was agreed title should be taken in her name, and that for several years afterward she did not know the deed ran to her husband.

Plaintiff and her husband parted in 1923, and, in March, 1924, she obtained a divorce in Wisconsin, by default and upon service by publication. The decree relieved plaintiff's separate property of her husband's right by curtesy and awarded their joint property to her. No reference was made to the Ironwood premises. There were two children, whose custody was awarded to plaintiff, but one of them, Cornelia, remained with her father until his death. Shortly after the decree, plaintiff revoked the power of attorney.

Sirianni wandered about, remarried, and finally went to Iron Mountain. In January, 1926, defendant entered his family as a domestic. Her husband had died, his property was sold, and in August she had over $2,200 in a bank. August 23d, Sirianni, defendant, and Cornelia, the latter then 12 years of age, drove from Iron Mountain to Ironwood, where Sirianni executed to defendant a deed of the Ironwood property, subject to the $1,500 mortgage, and defendant claims she paid him $2,200. Her bank book shows withdrawal of that amount at that time. She said she understood that the conveyance was in the nature of a mortgage, as it was arranged that she should sell the property, pay the outstanding incumbrance, retain her own advance with six per cent. interest, and hold the balance for Cornelia. The deed to defendant describes Sirianni as "a divorced man, now single." The scrivener said he

did this without suggestion from anyone, and defendant said she did not notice it. If it had any significance in showing fraud, the fraud would appear to have been directed against Sirianni's second wife rather than plaintiff.

Shortly afterward, Sirianni moved to Mississippi, where he died March 1, 1927. Cornelia returned to her mother at her father's death.

Plaintiff testified that Cornelia told her at once that the conveyance to defendant was fraudulent and related to her the circumstances under which it had been given. Cornelia testified that, on the trip to Ironwood, she fell asleep, awoke and heard her father and defendant talking about a "fake" sale, to be made for the purpose of preventing plaintiff taking any interest in the property; that defendant was to take title, and if Sirianni died first she was to give the home to Cornelia, and if defendant died first he would take care of her daughter; that her father told her he was afraid plaintiff might get the house and he did not want her to have it; that in the scrivener's office, defendant gave her father a roll of money and when they left he returned it to her. The scrivener and defendant denied that Cornelia was in the office at the time of the conveyance.

The present action was begun October 7, 1929, to set aside the deed to defendant upon the ground that Sirianni had purchased the property with plaintiff's money, had taken title without her knowledge and consent and in fraud of her rights, and, therefore, held it in trust for her, 3 Comp. Laws 1929, § 12975; and that defendant was not a purchaser for a valuable consideration and without notice of such trust, 3 Comp. Laws 1929, § 12976. Plaintiff had decree.

The question is purely one of fact. As the trial court had the advantage of seeing the witnesses and

expressed himself as favorably impressed with Cornelia's intelligence and veracity, it is with hesitancy that we feel compelled to disagree with his findings.

Plaintiff's testimony was not impressive in general or in detail. To illustrate, she stated that after the divorce she sought everywhere for Cornelia, whose custody had been awarded to her; that shortly before the day of the conveyance she received information that her husband was to go to Ironwood to make the conveyance; that she went from Gary, Indiana, to Ironwood, and, from across the street, saw Cornelia enter the scrivener's office with Sirianni and defendant; and she returned to Gary without attempting even to speak to her daughter. This testimony was a patent attempt to corroborate Cornelia's claim that she was in the scrivener's office at the time of the conveyance.

In October, 1927, shortly after Sirianni's death, plaintiff filed a verified bill in Gogebic county against this defendant and the mortgagee, in which she alleged that during the time plaintiff resided with him as his wife he owned the property at bar; that it had been purchased with the proceeds of the sale of her Hurley premises; that title was taken in Sirianni's name; that Sirianni died leaving as his widows plaintiff and a woman unknown to her; that, by his death, she became seized of one-third of the premises as dower; that defendant remained seized of the other two-thirds; that the whole was subject to the outstanding $1,500 mortgage; that she and defendant were tenants in common; and she prayed for partition of the premises as between her and defendant. She did not claim fraud nor breach of trust in Sirianni taking title in himself nor ask that the deed to defendant be set aside.

Before filing such bill, so plaintiff testified, Cornelia had told her the details of the conveyance to

defendant and she said she related them to her attorneys in Wisconsin, who were in charge of the suit through local counsel. Conceding that clients are not always responsible for misunderstandings of attorneys, it is hardly credible that a lawyer, with such a state of facts told him as Cornelia is said to have related to plaintiff, would file a bill seeking merely assignment of dower and fail to allege fraud or trust title. The suit was dismissed, and the present action then begun.

It is undisputed that as early as 1920 Sirianni told plaintiff's father that he had taken title in his own name. The record is not clear as to whether plaintiff was present at the time. However, had she understood that the title to the Ironwood property was in her name it seems unreasonable that she would not so have alleged in her suit for divorce or otherwise have taken action to gain possession; that she waited a matter of seven years, until her husband's death made it impossible to impeach her testimony as to the understanding between them, before making claim to interest in the premises; that, with full information as to the manner in which the conveyance to defendant was made, plaintiff made claim only of dower, thereby recognizing Sirianni's ownership; that she waited an additional two years before making claim of title by fraud and trust; and she offers no fair explanation for her delay. Her whole testimony compels the impression that her claim of fraud was conceived after she discovered that her claim of dower was unfounded.

The testimony of Cornelia, given four years after the conveyance, as to the details of a business transaction which occurred when she was 12 years old, is unusual in its accurate pertinence to the legal points here involved, as, for instance, the showing of fraud as against plaintiff rather than as against Sirianni's

second wife and return to defendant by Sirianni of the consideration for the conveyance.

Sirianni's financial character and conduct were such that it would not have been an improbable thing for him to endeavor to get possession of defendant's money. Nor would it be unnatural that he desired to save the residue of the property for Cornelia because it was purchased with her mother's money. The record does not indicate that Sirianni had any reason to apprehend that plaintiff had or would make claim to the property. He had had title for six years. Plaintiff's father knew Sirianni had title. It is not an unfair inference that plaintiff also knew it. Two years had passed since the divorce, and plaintiff had made no claim of ownership.

It is a demonstrated fact that defendant drew $2,200 from her bank the day of conveyance. Except for Cornelia's testimony, the record does not indicate that Sirianni gave the money back to defendant. Nor is it otherwise shown that she ever again had possession of the money.

Upon the whole record, we think it clear that, if there was fraud in the transaction, it was directed against Sirianni's second wife and not against plaintiff; that the evidence preponderates in favor of defendant's loan of the money to Sirianni without notice that plaintiff made claim to the premises; and that plaintiff has not sustained the burden of proof that Sirianni held title in trust for her.

Sirianni's widow and heirs were not made parties to the suit. Consequently, the claim of plaintiff or defendant to ultimate title or lien cannot be here determined.

Decree reversed, and bill dismissed.

CLARK, C. J., and McDONALD, POTTER, SHARPE, NORTH, WIEST, and BUTZEL, JJ., concurred.