# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

---

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

CHRISTOPHER WILEY,

       Defendant-Appellant.

FOR PUBLICATION
May 4, 2018
9:00 a.m.

No.   336898
Wayne Circuit Court
LC No.   95-002388-01-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

WILLIAM LAWRENCE RUCKER,

       Defendant-Appellant.

No.   338870
Wayne Circuit Court
LC No.   92-014245-01-FC

---

Before:  BOONSTRA, P.J., and BECKERING and RONAYNE KRAUSE, JJ.

BOONSTRA, P.J. (*concurring in part and dissenting in part*).

    I agree with the parties (both plaintiff and defendants at various times) that the constitutional ex post facto issue is not properly before us.  Further, I discern—from the issues and arguments raised on appeal—no challenge to any aspect of the sentences imposed by the trial court (apart from an *Alleyne*[1] challenge); rather, the sole issue raised is whether a nonparty (the parole board or the Michigan Department of Corrections (MDOC)) may—in the future— constitutionally apply MCL 769.25a(6) to the unchallenged sentences imposed by the trial court. Accordingly, I dissent from the majority's determination to decide the constitutional issues in the current context.  I concur with the majority's disposition of the *Alleyne* challenge.  Accordingly, I would affirm.

---

[1] *Alleyne v United States*, 570 US 99; 133 S Ct 2151; 186 L Ed 2d 314 (2013).

## I. THE ISSUES ON APPEAL

In Docket No. 336898, defendant Christopher Wiley ostensibly appeals by right the trial court's order resentencing him to 25 to 60 years' imprisonment for his 1995 conviction of first-degree murder, MCL 750.316, under MCL 769.25a. Wiley's brief on appeal contains neither the required "statement of the basis of jurisdiction," MCR 7.212(C)(4), nor the required "statement of questions involved," MCR 7.212(C)(5). Wiley's arguments on appeal are limited, however, to raising constitutional challenges to MCL 769.25a.[2] Wiley did not raise any constitutional claims at his resentencing. To be preserved for appellate review, an issue must be raised before and addressed by the trial court. Consequently, the constitutional issues are not preserved with regard to Wiley. *People v Giovannini*, 271 Mich App 409, 414; 722 NW2d 237 (2006). We review unpreserved constitutional issues for "plain error affecting defendant's substantial rights." *People v Bowling*, 299 Mich App 522, 557; 830 NW2d 800 (2013). Under the plain error rule, a "defendant bears the burden of establishing that: (1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights." *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003). "To establish that a plain error affected substantial rights, there must be a showing of prejudice, i.e., that the error affected the outcome of the lower-court proceedings." *Id*. at 356. "[R]eversal is only warranted if the defendant is actually innocent or the error seriously undermined the fairness, integrity, or public reputation of the trial." *People v Pipes*, 475 Mich 267, 274; 715 NW2d 290 (2006). Wiley concedes that the proper analysis is that of plain error, but does not articulate what errors the trial court purportedly made.

In Docket No. 338870, defendant William Lawrence Rucker ostensibly appeals by right the trial court's order resentencing him to 30 to 60 years' imprisonment for his 1993 conviction of first-degree murder, MCL 750.316, under MCL 769.25a. Rucker's brief on appeal asserts that this Court "has jurisdiction of this appeal under MCR 7.203(A)(1) and MCR 7.202(6)(b)(iii).[3] Rucker raises two issues on appeal: (1) an *Alleyne* challenge; and (2) a constitutional ex post facto challenge. Rucker arguably preserved those issues in the trial court. With regard to the constitutional challenge, however, Rucker—like Wiley—does not articulate on appeal any errors that the trial court purportedly made.

---

[2] The constitutional issues raised by Wiley on appeal include (a) whether MCL 769.25a(6) violates the Ex Post Facto Clause of United States and Michigan Constitutions, US Const art I, § 10; Const 1963, art 1, § 10; (2) whether MCL 769.25a(6) improperly repeals an initiative adopted by voters as "Proposal B," in violation of Const 1963, art. 2, § 9; and (c) whether MCL 769.25a(6) violates the Title-Object Clause of the Michigan Constitution, Const 1963, art 4, § 24. In light of its disposition of the first of these issues, the majority does not reach the remaining two issues. I would not reach any of them in the context of these appeals.

[3] MCR 7.203(A)(1) provides for an appeal of right of a "final judgment or final order" of a circuit court, "as defined in MCR 7.202(6). MCR 7.202(6)(b)(iii) defines a "final judgment or final order" in a criminal case to include "a sentence imposed following the granting of a motion for resentencing."

## II. THE PARTIES' MORPHING LEGAL POSITIONS

In responding to Wiley's appeal, plaintiff argued in part as follows:

> The People first note that this Court has no subject-matter jurisdiction to consider defendant's claim. Defendant's challenge has no relevancy to the validity of his sentence. Defendant was sentenced to a term of years within the range of sentences proscribed by statute. Defendant's challenge is not that the courts or the prosecution are denying him constitutional rights that would affect the validity of his sentence. The sentencing court does not have authority to award disciplinary or special disciplinary credits. Defendant's challenge is to the legislative branch's denial of credit reductions and the executive branch's execution of that legislative directive in determining when defendant is eligible for parole. Once a defendant is committed to the custody of the Michigan Department of Corrections, authority over a defendant passes out of the hands of the judicial branch. The Michigan Department of Corrections, an administrative agency within the executive branch of government, possesses *exclusive* jurisdiction over questions of parole. Parole can be granted *solely* by the Michigan Parole Board, a division of the MDOC. Once a defendant has been lawfully committed to the custody of the MDOC, the Michigan Legislature has determined that the only body that can release defendant from prison is the Parole Board, not the sentencing court or any subsequent reviewing courts. Whether or when a defendant should be released on parole is devoted exclusively to the discretion of the Parole Board. Because parole is a discretionary function, no due process right is implicated. "That the state holds out the possibility of parole provides no more than a mere hope that the benefit will be obtained . . . a hope which is not protected by due process."
>
> > "The Michigan parole statute . . . does not create a right to be paroled. Because the Michigan Parole Board has the discretion whether to grant parole, a defendant does not have a protected liberty interest in being paroled prior to the expiration of his or her sentence. The Sixth Circuit has held that Michigan Complied Laws § 791.233 does not create a protected liberty interest in parole, because the statute does not place any substantive limitations on the discretion of the parole board through the use of particularized standards that mandate a particular result.

Since defendant's constitutional claim has no effect on the validity of his sentence, but only to how the Department of Corrections is calculating parole eligibility, it seems that defendant's challenge would be better directed in a suit against the Department of Corrections and not in an appeal of his validly imposed sentence. Judicial review of a Parole Board decision is governed by MCL 791.234(11). While the statute provides an avenue for the prosecution to appeal the granting of a prisoner's release on parole, it does not extend the same for a defendant seeking to challenge the Board's parole decisions, including the awarding or denial of disciplinary credits. Prisoners "have no legal right to seek

-3-

judicial review of the denial of parole by the Parole Board." Importantly, this Court has no subject-matter jurisdiction to consider defendant's challenge to the Parole Board's decisions in determining a prisoner's eligibility for parole or to deny him parole.

The judiciary has limited review of the Parole Board's process in determining parole. But, defendant's current appeal is not the correct vehicle for such review. Challenges to the procedures used by the Parole Board in determining whether to grant parole, how the Board exercised those procedures, or the decisions reached by the Board based on those procedures are properly subject to a totally different appellate procedure.

The Parole Board is an administrative body. By statute, the Parole Board has been entrusted to develop its own guidelines for exercising its discretion in considering prisoners for parole and deciding whether to grant parole. In *Hopkins v Parole Board,* this Court determined that there were three avenues for a prisoner to challenge the Parole Board's decisions: (1) review pursuant to a procedure specified in a statute applicable to the particular agency, here the applicable statute being MCL 791.234; (2) the method of review for contested cases under the Administrative Procedures Act (APA), MCL 24.201 et. seq, or (3) an appeal pursuant to the Revised Judicature Act (RJA), MCL 600.631. The Court then determined that review under either the APA and RJA was unavailable to prisoners because parole hearings are not contested cases and because the prisoner has no private right to parole. The final avenue for review, MCL 791.234, as previously mention, also does not provide for review. Although none of the avenues for review listed in *Hopkins* are available, the legality of a prisoner's detention "is not insulated from judicial oversight." The prisoner is still able to challenge the Parole Board's action by filing a complaint for habeas corpus challenging the legality of his detention or an action for mandamus to compel the Board to comply with its statutory duties. It is only by these avenues, and not by an appeal of the underlying sentences, that defendant may challenge the guidelines or decisions of the Parole Board concerning parole. This Court has no subject-matter jurisdiction to review the guidelines of the Parole Board, the process the Parole Board conducted in determining defendant's eligibility for parole, or the Board's final decision regarding parole. [Citations omitted).]

Plaintiff argued similarly—and to a large extent verbatim—in response to Rucker's appeal. The Attorney General subsequently filed amicus curiae briefs in support of plaintiff in both appeals, addressing only the constitutional ex post facto issue.

After the filing of plaintiff's briefs on appeal, both defendants moved to voluntarily dismiss their appeals under MCR 7.218. Plaintiff, then represented principally by the Attorney General, opposed the motions, arguing that the ex post facto issue presented questions of state law that should be decided by a state court, and that defendants had moved to dismiss their

appeals because of the pendency of the related putative class action challenge presented in the United States District Court proceeding captioned *Hill v Snyder*, Case No. 10-cv-14568. This Court denied defendants' motions to dismiss in separate orders.[4]

At oral argument, counsel for defendants agreed with the position stated in plaintiff's briefs—that the proper parties are not before the Court, that the matter is not ripe, and that the sentencing judge has no authority to compute good time or disciplinary credits or to order the parole board or the MDOC to do so.[5]

### III. SUBJECT-MATTER JURISDICTION

Because Rucker raises an arguably preserved *Alleyne* challenge, and because these appeals were consolidated by order of this Court,[6] I conclude that this Court has subject-matter jurisdiction over these appeals generally. I therefore disagree with plaintiff's initial characterization that this Court lacks subject-matter jurisdiction. However, for the reasons that follow, I also conclude—as plaintiff initially asserted and as defendants now assert—that these appeals of defendants' sentences are not the proper vehicle by which to decide the constitutional challenge asserted. Rather, I conclude that we should address only Rucker's *Alleyne* challenge, and that the constitutional issues are not properly before us.

### IV. RIPENESS/AGGRIEVED PARTY

Irrespective of whether, as plaintiff now argues, the ex post facto issue presents questions of state law, such that a state court should weigh in on those questions apart from the federal court's April 9, 2018 decision in *Hill*,[7] it still begs the question of whether *this* Court, in *these* cases, is the proper forum in which to decide the issue. I conclude that it is not.

---

[4] See *People v Rucker*, unpublished order of the Michigan Court of Appeals, issued February 16, 2018 (Docket No. 338870); *People v Wiley*, unpublished order of the Michigan Court of Appeals, issued March 5, 2018 (Docket No. 336898).

[5] As noted, the parties' positions in this case have morphed and shifted with the developments in *Hill*. For example, plaintiff's briefs on appeal (in part challenging this Court's subject matter jurisdiction) were filed before the December 20, 2017 decision of the United States Court of Appeals for the Sixth Circuit, see *Hill v Snyder*, 878 F3d 193 (CA 6, 2017), that reversed the District Court's earlier dismissal of the ex post facto challenge in that case, see *Hill v Snyder*, unpublished opinion of the United States District Court for the Eastern District of Michigan, issued February 7, 2017 (Case No. 10-14568). And defendants filed their motions to dismiss their appeals—and plaintiff opposed those motions—after that decision of the Sixth Circuit.

[6] See *People v Wiley*, *People v Rucker*, unpublished order of the Michigan Court of Appeals, issued January 17, 2018 (Docket Nos. 336898/338870).

[7] *Hill v Snyder*, opinion of the United States District Court for the Eastern District of Michigan, issued April 9, 2018 (Case No. 10-cv-14568).

In appealing their sentences, defendants did not challenge the sentences themselves, but essentially sought a declaration from this Court that MCL 769.25a(6) is unconstitutional and that it must not be applied so as to affect their future parole eligibility.[8] Plaintiff argued that the request was improper in this context. Now, in an unusual swapping of legal positions, defendants essentially concede that their request was improper; yet plaintiff now advocates that we issue the diametrically-opposed declaration.

I conclude that the claims presented (if indeed they can be described as such in this criminal sentencing context) are not ripe, that defendants were not aggrieved by any decision of the trial court (and therefore are not "aggrieved parties"), and that the constitutional issues presented are otherwise not appropriately decided by this Court in this context, for several reasons.

First, it bears repeating that defendants did not seek, by their constitutional challenges, any relief from their convictions or from their sentences as imposed by the trial court. Yet the rules of this Court limit its jurisdiction over appeals by right to those filed by an "aggrieved party" from an order of the trial court. See MCR 7.203(A). "To be aggrieved, a party must have suffered a "concrete and particularized injury." *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 291; 715 NW2d 846 (2006). Further, "a litigant on appeal must demonstrate an injury *arising from either the actions of the trial court or an appellate court judgment rather than an injury arising from the underlying facts of the case.*" *Id*. at 492 (emphasis added). Neither defendants nor plaintiff has identified any injury arising from any actions of the trial court. I therefore conclude that, apart from Rucker's *Alleyne* challenge, defendants are not "aggrieved parties" for the purpose of challenging MCL 769.25a(6) in this context.

Moreover, and regardless of whether defendants presented their constitutional challenges in the trial court, it is far from clear to me that the trial court would have possessed the authority, in the context of the criminal proceedings then before it, to essentially enter a declaratory judgment that would have bound the parole board or the MDOC; our Supreme Court has stated that, depending on the type of underlying claim, a *complaint* for declaratory relief against a state agency must be filed in either the Court of Claims or the circuit court. See *Parkwood Ltd Dividend Housing Ass'n v State Housing Dev Authority*, 468 Mich 763, 773-775; 664 NW2d 185 (2003). These cases are criminal prosecutions, however, not actions for declaratory relief. No such complaint was filed, nor could one realistically have been filed, in the course of these criminal proceedings. Yet defendants essentially sought (and plaintiff now seeks) to transform these appeals into declaratory judgment proceedings originating in this Court. We lack original jurisdiction over such actions. *Id*. Further, we are an error-correcting court, see *W.A. Foote Mem Hosp v Michigan Assigned Claims Plan*, 321 Mich App 159, 181; 909 NW2d 38 (2017). But neither plaintiff nor defendants have identified any errors by the trial court that either of them seeks to have us correct, and the declaratory relief that defendants essentially sought (and

---

[8] It remains unknown at this time whether either Wiley or Rucker will ever become eligible for parole, when they might become eligible, or whether MCL 769.25a(6) will continue to exist in its current form at any such time.

plaintiff now seeks) was never even considered by a court with original jurisdiction over such matters.

In any event, even if we possessed the ability to order declaratory relief in this context, our ripeness doctrine precludes "the adjudication of hypothetical or contingent claims before an actual injury has been sustained. A claim is not ripe if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.' " See *Michigan Chiropractic Council v Comm'r of OFIR*, 475 Mich 363, 371 n 14; 716 NW2d 561 (2006), overruled on other grounds by *Lansing Schools Educ Ass'n v Lansing Bd of Educ*, 487 Mich 349 (2010), quoting *Thomas v Union Carbide Ag Products Co*, 473 US 568, 580-581; 105 S Ct 3325, 87 L Ed 2d 409 (1985) (citation omitted); see also *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 554; 904 NW2d 192 (2017). In this case, even assuming that defendants accrued disciplinary credits during their terms of imprisonment before resentencing, MCL 800.33(3) and (5) provide that such credits "shall be deducted from a prisoner's minimum and maximum sentence in order to determine his or her parole eligibility dates." MCL 800.33 also empowers the warden of a prison, as well as the parole board in the case of parole violations, to both reduce and restore such credits based on prisoner conduct.[9] See MCL 800.33(6)-(10), (13). In other words, the language of MCL 800.33 pointedly does not provide for a trial court, when resentencing a defendant, to consider the disciplinary credits then earned by the defendant, because the amount of credits earned is not then known or even a sum certain—a defendant may gain and lose credits based on his or her conduct in prison. Rather, these credits are to be considered by the parole board or the MDOC, at the appropriate future time, in determining parole eligibility.

Although defendants appeal from their resentencings, they had suffered no injury to their parole eligibility at the time of the resentencings. Rather, their claims appear to rest upon a contingent future event, i.e., a denial of disciplinary credits, assuming they were earned and have not been forfeited by misconduct, at the time that their parole eligibility will be determined (again, assuming that MCL 769.25 a(6) exists in its current form at that time). Such a claim is not ripe. See *Michigan Chiropractic* 475 Mich at 371 n 14; see also *In re Parole of Johnson*, 235 Mich App 21, 25; 596 NW2d 202 (1999) ("[A] prisoner is not truly 'eligible' for parole until each and every one of the statutory 'conditions' [for the granting of parole] has been met.").

My conclusion is strengthened by the fact that a prisoner may not take an appeal, either by claim of right or by leave granted, from the denial of his parole. See MCL 791.234(11); see also *Morales v Michigan Parole Bd*, 260 Mich 29, 42; 676 NW2d 221 (2003). A prisoner has no constitutional right to parole. *Morales*, 260 Mich at 39. A prisoner may, however, use the "legal tools of habeas corpus and mandamus" actions in order to "have the judiciary review the legality of inmates' imprisonment." *Id*. at 42. I see no reason why this same standard should not apply to a prisoner aggrieved by a potential *future* denial of parole, even if he could overcome the ripeness problem. I note that cases relied upon by the federal Court in *Hill v Snyder*, opinion of

---

[9] A circuit court may order the reduction or forfeiture of credits only in limited circumstances related to a prisoner's malicious or vexatious court filings. See MCL 800.33(15), MCL 600.5513.

the United States District Court for the Eastern District of Michigan, issued April 9, 2018 (Case No. 10-cv-14568), for the proposition that "good time credit is earned even by individuals serving life sentences," arose in such contexts. See *Moore v Buchko*, 379 Mich 624; 154 NW2d 437 (1967) (mandamus); *Meyers v Jackson*, 245 Mich 692; 224 NW2d 356 (1929) (habeas corpus); *In petition of Cammarata*, 341 Mich 528; 67 NW2d 677 (1954) (habeas corpus).[10]

The Attorney General, as amicus curiae, nonetheless contended at oral argument in this case that we should decide the ex post facto issue in the context of these criminal sentencing appeals because this Court and our Supreme Court have previously considered issues involving good time credits or disciplinary credits on direct review. The majority agrees. But I find these cases distinguishable. For example, in *People v Tyrpin*, 268 Mich App 368; 710 NW2d 260 (2005), the defendant had originally been sentenced to a jail term, and was later resentenced, after a prosecution appeal, to a prison term. *Id*. at 370. The defendant argued that the jail good-time credit that he had earned under MCL 51.282 should have been applied on resentencing by increasing the number of days for which he would have received credit for time served. *Id*. at 371. The defendant made no argument concerning parole eligibility, but was aggrieved by what he believed to be the trial court's failure to add 61 days to his sentencing credit as reflected in the judgment of sentence. *Id*. The injury alleged by the defendant (although his claim was ultimately unsuccessful) was neither contingent nor hypothetical; the defendant alleged that the trial court had erred by calculating his credit for time served. *Id*. Our analysis of good-time and disciplinary time statutes was conducted in that context. By contrast, there are no alleged errors by the trial court in the instant appeals.

In *People v Cannon*, 206 Mich App 653; 522 NW2d 716 (1994), the defendant argued that the imposition of a fixed jail sentence with a specified release date violated his right to receive good-time jail credits under MCL 51.282. *Id*. at 654. Again, the defendant was aggrieved by the trial court's sentencing order, which had already injured him by fixing his release date to a specific date regardless of sentencing credits. *Id*. at 656 (holding that "a court may not deprive a prisoner of good-time credit to which a prisoner may be entitled under statute before that prisoner has even begun serving the term of imprisonment.")

And in *People v Johnson*, 421 Mich 494; 364 NW2d 654 (1984), our Supreme Court considered the effects of Proposal B on life sentences. *Id*. at 497. Although the Court did declare Proposal B to be binding on the parole board with regard to indeterminate sentences, the context of the defendant's appeal was that the trial court had not correctly informed him of the consequences of his guilty plea. *Id*. at 496. Once again, the defendant was aggrieved by an action of the trial court.[11]

---

[10] *Hill* itself arose in the context of a claim under 42 USC 1983.

[11] I note also that our Supreme Court is much freer than we, as an intermediate appellate court, to consider issues beyond the claimed errors of the lower courts and to opine on broader issues of Michigan law. See *People v Woolfolk*, 304 Mich App 450, 475-476; 848 NW2d 169 (2014).

## V. CONCLUSION

For all of these reasons, I would not reach the constitutional issues presented.[12] They are not properly raised in the context of these appeals, inasmuch as they do not present any claim of error by the trial court in its resentencing decisions. Plaintiff is already litigating the ex post facto issue with a class of plaintiffs (which includes Wiley and Rucker) in federal court, and plaintiff or defendants remain free to additionally raise the issue in a proper state court proceeding in which the proper parties are present. By contrast, Wiley and Rucker are the only persons who will be directly affected by this Court's disposition of the issue in the context of these criminal sentencing appeals; in essence, we would be declaring the rights of two individuals with regard to this statute, while in the meantime a class action (of which Rucker and Wiley are also a part) is already proceeding and has already resulted in declaratory relief.

Because I would not reach the constitutional issues, and because I agree with the majority's treatment of the *Alleyne* issue, I would affirm (and would not, as does the majority, affirm while still issuing a declaration of unconstitutionality).

/s/ Mark T. Boonstra

---

[12] Although I do not express any opinion on the constitutional issues, I note that the parties have not briefed (nor does it appear to me that either the federal court in *Hill* or the majority in the instant appeals has addressed) whether a finding of unconstitutionality would relate solely to MCL 769.25a(6), or whether, alternatively, and given that the Legislature's enactment of that statutory provision was made in the context of the sentencing scheme set forth in MCL 769.25a(4), the entire sentencing scheme would be rendered unconstitutional. This gives me additional pause about deciding the constitutional issues in the current context.